UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT VERNON,

       Petitioner,

v.

       **DECISION AND ORDER**
       12-CV-928S
       08-CR-177S

UNITED STATES OF AMERICA,

       Respondent.

1.    Presently before this Court is the motion of *pro se* Petitioner, Robert Vernon, to vacate, set aside, or correct his sentence and conviction under 28 U.S.C. § 2255.

Also before this Court is Vernon's motion to return certain property – three passports, a credit card, and a driver's license – that he believes is in the possession of the United States Government. For the reasons discussed below, Vernon's motions are both denied.

2.    On July 29, 2011, Vernon appeared before this Court and pleaded guilty to violating 18 U.S.C. §§ 844(i) and (2).[1] At the plea hearing, this Court confirmed that Vernon had read and reviewed the plea agreement with his attorney (Plea Hr'g Tr. at 2, 20; Docket

---

[1] Vernon pleaded guilty to count two of the indictment, which charged:

> Between on or about the 22nd day of December 2006, and on or about the 25th day of December 2006, in the Western District of New York, the defendant, ROBERT M. VERNON, did aid, abet, counsel, command, induce and procure others, known to the Grand Jury, to maliciously damage and destroy, and to attempt to maliciously damage and destroy, by means of fire, the building at 334 Dingens Street, Buffalo, New York, which was used by the New York State Department of Motor Vehicles in interstate and foreign commerce and in an activity affecting interstate and foreign commerce.

No. 60), confirmed that Vernon was competent (id., 4-6), informed Vernon of his rights to plead not guilty and to go to trial (id., at 11--13), confirmed that Vernon committed the acts charged (id., at 23 ), discussed sentencing principles and guidelines (id., at 20), ensured that the plea was voluntary (id., at 23), verified that Vernon was not relying on any promises outside the plea agreement (id., at 22), confirmed that Vernon understood that a transfer to serve his sentence in Australia was not guaranteed, and, finally, accepted the guilty plea (id., at 24).

3. In the plea agreement, Petitioner "knowingly waive[d] the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release." (Plea Agreement, ¶ 21.)

4. On November 7, 2011, this Court sentenced Vernon – within the guideline range – to a 60-month term of imprisonment, imposed a three-year period of supervised release, and further imposed restitution in the amount of $264,417.91. (Sentencing Tr., at 11–13; Docket No. 61.) Vernon did not appeal.[2]

5. On September 26, 2012, however, Vernon filed the present motion under 28 U.S.C. § 2255, which allows federal prisoners to challenge the constitutionality of their sentences. That section provides, in pertinent part, that:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was

---

[2]The United States Supreme Court has held that an ineffective assistance of counsel claim may be raised in a § 2255 motion even if it was not raised on direct appeal. Massaro v. United States, 538 U.S. 500, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714 (2003).

2

> without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

6. The Second Circuit has held that a "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)). When, as here, a defendant waives his right to appeal or collaterally attack a sentence within an agreed upon range, he may not, absent limited exceptions, appeal the merits of a sentence conforming to the agreement. United States v. Hawkins, 513 F.3d 59, 61 (2d Cir. 2008).These exceptions include, *inter alia*, "when the waiver was not made knowingly, voluntarily, and competently." Held v. United States, No. 3:08CV1189(MRK), 2009 WL 179820, at *3 (D. Conn. Jan. 20, 2009) (quoting United States v. Gomez–Perez, 215 F.3d 315, 319 (2d Cir. 2000)).

7. In his motion, Vernon argues that his attorney provided ineffective assistance of counsel, and that, by virtue of that ineffective assistance, his plea was involuntary.

8. The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. Const. amend VI. It is well-established that "the right to counsel is the right to the effective assistance of counsel." Eze v. Senkowski, 321 F.3d 110, 124 (2d Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).

3

9. The standard for determining whether a defendant was provided with effective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish a claim under the Strickland standard, "a defendant must show (a) that counsel's representation 'fell below the objective standard of reasonableness' based on 'prevailing professional norms' and (b) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Eze, 321 F.3d at 123 (quoting Strickland, 466 U.S. at 688, 694).

10. "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012). There is a strong presumption in favor of the reasonableness of an attorney's performance. See Gilbert v. United States, 05-CV-325, 2006 WL 1174321, at *3 (N.D.N.Y. May 2, 2006) (citing Strickland, 466 U.S. at 688). This presumption applies because it is "too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." Strickland, 466 U.S. at 689.

11. Here, Vernon argues that his attorney, Joel Daniels, provided ineffective assistance of counsel because he offered Vernon bad advice: that Vernon would be a "prime candidate" for the Internal Treaty Prison Transfer Program. Vernon, whose application to serve his sentence in Australia under this program was eventually denied, alleges that he would not have pleaded guilty but for this advice.

12. According to the Department of Justice, "the International Prisoner Transfer Program began in 1977 when [the United States] government negotiated the first in a series of treaties to permit the transfer of prisoners from countries in which they had been

4

convicted of crimes to their home countries." http://www.justice.gov/criminal/oeo/iptu. According to documents appended to Vernon's complaint, the United States Department of Justice, Criminal Division, Office of Enforcement Operations ("OEO") – the office in charge of transfer requests – denied Vernon's request because it determined that Vernon has not "completed payment of [his] court-ordered restitution, and because [it] determined that [he] was a domiciliary of the United States." (Paula A. Wolf Letter; Docket No. 57.)

13. Although Vernon may have thought his prospects of transfer were better, he cannot sustain a claim that he would not have pleaded guilty but for that impression because he was aware that "the decision on . . . transfer . . . is at the discretion of the Office of Enforcement Operations of the United States Department of Justice." (Plea Agreement, ¶ 16.) Vernon's awareness that such a decision was entirely discretionary was reinforced at the plea hearing. To that end, the following exchange took place:

> THE COURT: And then rights and reservations are talked about after. There's a reference at paragraph 16 to your, if you will, alien status. I mean, you did mention you have four different citizenships. And the status bears with the agreement not to oppose a request by you to transfer to Australia for service of your sentence, do you understand that?
> THE DEFENDANT: Yes.
> THE COURT: No guarantees in that regard, but at least the agreement doesn't preclude that from taking place, you understand that?
> THE DEFENDANT: I have to try, your Honor. Thank you.

(Pl. Hr'g Tr. at 20.)

14. Even assuming Vernon was in fact not a "prime candidate" for transfer and that this advice "fell below objective norms," these assumed facts could not overcome his admission that – despite what his attorney may have told him – he *knew* that the prospect of being transferred was not certain, and that the authority to make a such a decision lied

5

within the discretion of another entity. His admission in this regard demonstrates that his plea was knowing and voluntary and that he suffered no prejudice on account of his attorney's advice. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977) ("Solemn declarations in open court carry a strong presumption of verity"); Papetti v. United States, No. 09-3626, 2010 WL 3516245, at *8 (E.D.N.Y. Aug. 31, 2010) ("The [plea] allocution by itself is sufficient to find that [petitioner] understood that there was no guarantee that he would receive any particular sentence 'regardless of what counsel had allegedly 'promised' him before hand.'") (citation omitted). Accordingly, Vernon's § 2255 motion is denied.

****

15. As for Vernon's motion for the return of property, Vernon states that he was arrested under an extradition warrant in Sydney, Australia, and that "[f]or safe keeping, [he] gave three passports (U.S., Canadian, UK) to the police along with [his] New South Wales Drivers License and a Credit Card." (Docket No. 67.) Vernon continues, "All items were signed over to three U.S. Federal Marshals who had made the trip to Australia to escort Defendant to Buffalo." (Id.)

16. Upon filing this motion, the U.S. Attorney's Office engaged in a search for these documents. In the end, the United Marshall's Service claims that it gave the documents to U.S. Attorney Richard Maigret, while U.S. Attorney Maigret claims to have never received them.

17. This Court has verified that the documents were never (and are not now) in its possession or the possession of the Clerk of the Court. And, without knowledge of the location of the documents, this Court is not in a position to order any further relief. It will

note, however, that under the policy of the Administrative Office of the United States Courts, passports of convicted defendants are typically forwarded to either the Bureau of Immigration and Customs Enforcement or the State Department.

****

18. For this Court to issue a certificate of appealability, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make the required "substantial showing" the petitioner must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Rhagi v. Astuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations omitted). Petitioner has made no such substantial showing of the denial of a constitutional right in this case. Accordingly, a certificate of appealability is denied.

****

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence and Conviction pursuant to 28 U.S.C. § 2255 (Docket No. 57) is DENIED.

FURTHER, that Vernon's Motion for the Return of Property (Docket No. 67) is DENIED.

FURTHER, that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

FURTHER, as authorized by 28 U.S.C. § 1915(a)(3), it is hereby certified that any appeal from this judgment would not be taken in good faith and leave to proceed as a poor person is therefore DENIED. See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that the Clerk of the Court is directed to close case 12-CV-928.

SO ORDERED.

Dated: September 27, 2013
       Buffalo, New York

<u>/s/William M Skretny</u>
WILLIAM M. SKRETNY
Chief Judge
United States District Court